SAMUEL W. GARRISON ET AL., RESPONDENTS, v. THE MAYOR AND ALDERMEN OF JERSEY CITY ET AL., APPELLANTS.

Argued December 11, 1918—Decided December 19, 1918.

The judges being equally divided on the question whether the judgment should be reversed, the judgment is affirmed solely because of such division, which renders any opinion by the court impossible.

On appeal from the Supreme Court, in which the following *per curiam* was filed:

"The urgency of an early decision in this case forbids the preparation of any elaborated opinion. The attack is on an assessment of taxes against property of the prosecutor for a period which happens to be the month of December, 1918. This is due to the statutory change in the fiscal year of municipalities, first enacted in 1908 (*Pamph. L., p.* 560) as to some, but not all municipalities, and extended to first and second class cities in the current year (*Pamph. L.* 1918, *p.* 901). The fiscal year of Jersey City before this enactment began December 1st and ended November 30th. The change in this fiscal year, making it begin January 1st, and end December 31st, necessarily caused a hiatus for which provision had to be made. In other cities it is more than a month; in Hoboken, eight months; in Newark, eleven months, and so on.

"The city authorities, conceiving that a separate budget and tax assessment for this interregnum period was authorized and required by law, proceeded to make up a budget for the month of December and fix a tax rate to raise the needed funds according to that budget so as to start the fiscal year 1919 in the manner provided by chapter 236 of the laws of 1918, which took effect October 1st, 1918, and chapter 242 of the same year, which may be called the 'New Budget act,' certain important provisions of which, comprised in sections 1, 12 and 13, take effect January 1st, 1919.

"The attack on the *ad interim* budget and tax assessment is on two main grounds: *First,* that there was no authority of law for a separate budget and rate for December, 1918, but that month should be added to and its budget levied with the budget assessment for 1919; and *secondly,* if it be held otherwise, still the budget and rate are illegal as containing illegal items and resulting in a rate beyond the limit set by law. On the other hand, defendants, while supporting the budget and rate on the merits, claim that prosecutors are barred by laches.

"We find no laches in the case.

"It was not until October 11th, 1918, that prosecutor learned of the assessment in question. The county board had until October 1st to settle the rate. Prosecutors assert in their brief that the rate was actually fixed October 11th, and this is not denied. If so, the application made within a month thereafter is not out of time. The city budget was advertised, it is true, in August, but states that the taxes to be raised were for the fiscal year ending December 31st, 1918. A misstatement which, whether intentional or not, seems to have deceived many citizens into thinking that the rate of $17.30 was for a year and not a month. We think laches is not made out.

"This brings us to the claim that there was no legal authority to make up a separate budget for the interim of December, 1918.

"We think this claim is not well founded. Had there been no new legislation, the orderly procedure in Jersey City would have been a duplicate of that in 1917, which was that the budget for the fiscal year of December 1st, 1917, to November 30th, 1918, was made up long in advance, in August of 1917. In 1918, but for the change in the law, the budget made up in August would have been for the year December 1st, 1918, to November 30th, 1919, which embraced the month in question and eleven more. But these eleven months are removed from the budget by the Fiscal Year act, chapter 238 of 1918; the budget for those months is to be made up,

by chapter 242, not later than February 9th and not earlier than December 1st, and this provision is not effective until January 1st, 1919, and leaves the old law in force until that date. The result seems to be that as to all parts of the old fiscal year that fall in the calendar year 1919, chapter 242 is operative, and as to all parts in the calendar year 1918 the former law is operative and a budget is properly made up thereunder for the remainder of 1918. Such has apparently been the practice in other municipalities, and we think correctly. It results in two budgets in a calendar year, but the alternative is between this and a budget for more than a year. We think that when section 4 (3) of the Fiscal Year act, chapter 238, says, 'In the budget and tax levy next following the passage and approval of this act,' the legislature meant a budget under the law in effect at the time, and that there is nothing in chapter 238 or in any other legislation called to our attention, which does more than change the period for which the next budget is to provide.

"The points made with respect to inclusion of the proper items may best be treated by quoting the fourth section just cited and stating our opinion of the meaning of the words and clauses pertinent to the controversy.

"The section reads as follows:

" 'In the budget and tax levy next following the passage and approval of this act, any municipality or county whose fiscal year or the period for which appropriations are made is altered by this act, is authorized to make appropriations for local purposes other than schools in the case of municipalities and for county purposes in the case of counties for the period between the close of the current fiscal year * * * and the thirty-first day of December following, and a further appropriation for general purposes in such amount as the governing body of such municipality or county may determine, and to raise by taxation such moneys, as, with the revenues derived or to be derived from other sources, will meet such appropriations; provided, that the amount to be raised by taxation for local purposes other than schools in the case

of municipalities and for county purposes in the case of counties shall not be such as to cause the rate in the tax levy for such local or county purposes to exceed the rate for like purposes in the next preceding tax levy.'

"The questions raised are these:

"What is meant by *'local purposes'*?

"What by 'general purposes'?

"What by 'rate' as applied to the interim: does it mean in this case a rate for local purposes for one month, *equal* to the rate for the entire preceding fiscal year, or such a rate as if multiplied by twelve, would not exceed that rate?

"Without undertaking to give definitions of these terms, we state our view of their meaning as applied to the case.

"We think 'local purposes' means the ordinary expenses of daily administration· of the city government, and institutions, such as salaries, rents, supplies and matters of similar character for which constant provision must be made.

"That 'general purposes' refers to obligations extra to ordinary running expenses, and include interest falling due on bonds or other indebtedness, principal of obligations maturing within the interim period, and any provision for sinking fund that would have had to be made within the month of December if the law had not been changed.

"The term 'county purposes' seems to embrace all legitimate components of a county budget, but is controlled by what we shall have to say in a moment about the rate.

"On this subject it seems plain to us that the intent of the legislature in providing the change of fiscal year and for the interim was to enable the cities and counties to raise what was needed for ordinary current expenses during the interim, and decidedly not to put into their hands a weapon of oppression to the taxpayers. In making this provision it was considered that the criterion of what would be needed for local or county purposes in an interim was a proportionate part of what was needed in the preceding fiscal year for similar purposes. To say it was intended that the city or county could spend in an interim, whether larger or shorter, whether

one month as in Jersey City or eight as in Hoboken or eleven as in Newark, as much as was spent in the preceding fiscal year, savors to us of absurdity. This construction enables the city of Jersey City and the county of Hudson to take advantage of a preceding annual rate to pay in one month as much as eighty-five per cent. of the preceding year's outlay, some of which perhaps goes in reduction of the 1919 budget, but much of which is purely extra expenditure. In two years and a month the taxpayers will have paid nearly three years' taxes. This could not have been intended. On the contrary, the 'rate' for December, 1918, is not to exceed the 'rate' attributable to December, 1917, i. e., an ordinary month's local expenditure. This is emphasized by the discretion given to raise money for general purposes, which is not limited. The county is a party, and its appropriations for a road, a hospital for the insane, and so on, are legal only so far as they do not cause the county tax rate to exceed one-twelfth of that for the preceding year.

"These considerations seem dispositive of substantially all the items challenged except the state road tax and state school tax.

"The road tax (*Pamph. L.* 1917, *p.* 41; 1918, *p.* 507.) is an annual tax collectible in municipalities by the machinery for collecting other taxes, and payable to the county collector, originally not later than December 22d, afterwards (1918 act) by December 15th.

"The road tax for 1917 was collected in Jersey City with the bills for taxes due December 20th, 1917.

"The road tax for 1919 will be assessed and collected by the machinery of the legislation of 1918.

"If the road tax for 1918 is not collectible by Jersey City with the one-month budget, it will not be collected at all. But for the change in fiscal year, there would be no question about it. If prosecutors are right, the state will get no road tax for 1918. We think the *ad interim* budget properly includes it.

"The same result is reached as to the state school tax. This tax, an annual one (*Comp. Stat.* 4780, ¶¶ 177, 178) due the state treasurer January 20th, 1918, was collected

with local taxes due December 20th, 1917. By the law, the city collector must pay the current school tax for Jersey City to the county collector on or before December 22d, 1918, and the county collector pass it on to the state treasurer by January 20th, 1919 (section 178). How is this to be done if it is not assessed and collected with the *ad interim* budget? We have held that the pre-existing machinery is operative until the new acts take effect on January 1st, 1919. The Fiscal Year act is not to the contrary in respect to this school tax. It does not mention it, and does mention local school appropriations. The school law is not affected; the school tax must be annually raised, and as in case of the road tax if not raised as part of the *ad interim* levy it will not be raised at all.

"The net result is that in some respects the budget and tax rate are illegal, and to the extent of such illegality, so far as they affect the prosecutors, should be set aside.

"The present writ affects prosecutor's taxes only and not the entire levy. Application was made for a writ to bring up the entire levy and ordinance. *Allocatur* to that writ is still reserved, but the apparent illegalities are of such consequence that a general writ may be advisable unless the city and county authorities are disposed to revise the budgets and rates in accordance with the foregoing views."

For the appellants, *John Milton* and *John J. Fallon.*

For the respondents, *Harry Lane.*

PER CURIAM.

The judgment under review herein is affirmed by an equally divided court.

*For affirmance*—TRENCHARD, BLACK, HEPPENHEIMER, WILLIAMS, GARDNER, JJ. 5.

*For reversal*—THE CHANCELLOR, SWAYZE, BERGEN, KALISCH, TAYLOR, JJ. 5.